You enjoyed it so much you decided to stick around. It proves that double-headers have not been abolished. I'm in the Western District of Pennsylvania. I've had several double-headers over my 16 years. It's always enjoyable. May it please the court, your honors, good morning. For the record, my name is Karen Sirianni Gerlach, and I am the attorney for the appellant in this case, Mr. David Ausburn. At this point, I would ask the court's permission to reserve three minutes of rebuttal. Thank you, your honor. In this case, the district court imposed a sentence of 12 years. That 12-year sentence represented an upward variance two times greater than the uppermost end of the advisory guideline range of 57 to 71 months. The case law is very clear that when sentence variances are so substantially greater than the advisory guideline range, they warrant extra scrutiny. The purpose of the extra scrutiny is twofold. It must be determined, first of all, whether there were compelling facts and circumstances to support a variance so great. And second of all, it must be determined whether the district court has provided an adequate explanation of why a guideline sentence within the advisory range would not serve the goals of 3553A. The record here, under extra scrutiny or even a very surface superficial scrutiny, does not show either of these two factors. The sum total of what the district court said as its rationalization and justification for so great of a variance was that, first of all, Mr. Ausburn was a police officer. So is the thrust of your attack on the substantive reasonableness or unreasonableness of this sentence? Yes, it is, your honor. Because I fully expected you to lead off with your due process right to advance notice argument. That is a big part of it, too, your honor, because when there is... How does that play into this? Okay. If this court is not going to require notice... Yeah, you would agree, would you not, that Vampire Nation... Well, I personally believe that the Vampire Nation case is not squarely on all fours with this... Well, it's not squarely on all fours because we did not deal with a due process issue. Exactly. We dealt with Rule 32H. Exactly. And Rule 32H says specifically, departures, quote-unquote. It doesn't speak of variances. So this court found in Vampire Nation that in the instance of upward variances, that Rule 32H doesn't require notice. It didn't address the due process situation. I mean, you know all the cards are on the table when you go in for a sentence. The whole question, I remember writing a not-presidential opinion saying there's going to be cases where it's not so easy to tell whether there was a variance or a departure. But that particular case, the judge said variance. But you know all the cards are on the table in the beginning. You do not anymore than you know for a departure. Why not? Booker didn't change the scenery and entire landscape enough that when you walk in with a client, you don't think, you don't advise him or her that the near sky is the limit, anything can happen here? If the court will indulge me for one moment, may I propose a hypothetical which illustrates why this is so dangerous and frightening? We had victim statements at the sentencing. Counsel received very late notice of the victim statements. Imagine this scenario. The victim impact statements came from the girl's father and her guardian. Imagine a scenario where the guardian and the father had come into court and said to the judge, Mr. Osborne impregnated this girl. Mr. Osborne gave this girl a sexually transmitted disease. Mr. Osborne's nudging defense counsel saying, I've had a vasectomy. I could not have impregnated her. I don't carry any sexually transmitted diseases. And my doctor could prove all this. Defense counsel jumps up and says, Your Honor, this is impossible. We need a continuance. We need to get a doctor. And we didn't have any notice. And Judge Schwab could have very easily said, too bad. You don't have a title to notice. All right. Well, that clearly is not this case. No, it's possible. Assuming it were, you seem to be suggesting that there is some enhanced need for notice that is also somehow fact-bound. And if that's the suggestion, how would we ever craft a rule, even short of recognizing a due process right here, that would be workable? The rule for departures under 32H and Burns is fact-specific. And really, if you don't have the facts, how do you prepare to combat this evidence? I think to me, maybe it's a simple-minded reaction on my part, but the hypothetical you describe is one in which I can well imagine a reviewing court saying, you know, the sentencing judge certainly should have allowed a continuance. It was an abuse of discretion not to. And you take care of that case by case. And I wonder if that isn't the approach, rather than some overall constitutional approach saying you always have to have notice that takes care of the situation. Is this one, is the case before us one which is a hypothetical? It is dangerous to assume that it would be taken care of without a role. It is possible that a panel could see it as an abuse of discretion, but it is also possible that they could not. As for this case... Judge Pollack has asked an excellent question. And taking that question even further, aren't we obligated first to look to some non-constitutional resolution before we reach a due process argument? I don't know unless this court has already declined to extend Burns to this context, and Rule 32H doesn't speak of variances. So I am unaware at this juncture of any other remedy. Well, let's not just talk about this court. For background purposes, can you cite me to an opinion of any court of appeals that has recognized a due process right to advance notice in this context? I have a list of cases which require notice, and I know one of them says that if it is a matter, or rather under the guidelines, it's no different. Because under the guidelines, you have all these guidelines out there that speak of departures, and list all the grounds on which departures could come, just as for variances, you have the 3553A... That doesn't really answer my question. I think in answer to your question, I am unaware of any case. I'm not aware of any case. The problem with the case law, Your Honor, if I may, frankly, it's a mess. Because in the case law, dealing with whether there should be notice or not, some of these circuits, and I'm proud to say the third circuit is not one of them, they don't even differentiate between variances and departures. And some of them just take 32H at face value, and some of them just say, if you require it for departures, why not for variances? So I would really encourage this court to strike out on its own in this matter. And I think we have a novel situation here, and I think it requires independent thinking by this court and a rectification of the problem. Assuming that we do not regard this as something that implicates the due process clause, does that make it really just a matter, once again, for the criminal rules committee? I think that it is a due process problem. Because when you don't know what you're up against in the evidence, and I think that the hypothetical I presented is not an unreasonable one. But these are the other justifications for a need for notice. First of all, the need to defend. Second of all, accuracy. Judicial economy. If defendants get advance notice of a district court's intent to depart upward, that means that they can prepare for it, they can defend. And I might not be here today appealing this and increasing the court's otherwise already burdened docket. Basic fairness. And even though the case law says that there's no unfair surprise, there is. Mr. Osborne, his counsel was not arguing in the district court against an upward variance. He was asking for a downward variance. That's how sandbagged he was by this whole thing. What would you have done if the court, at the beginning of the hearing, said you should know that I may go well above the guidelines, and may do so by reason of a variance, and that I will not be courting from the guidelines? And then he set forth the fact that it was set forth. Does that scenario assume that the district court gave whatever scant reason it gave on the record, or not? Yeah, you knew just what the judge was going to say, and he told you. So you'd argue against it. Did that happen to any of you? What would you have done differently? See, I can understand your hypothetical, which I don't, in a sense, think is very good, because I can't conceive that the court would have granted a continuance to come in with it. But I can understand what you would have done there. But what would you have done here? There were factors about the girl and her relationship with the parents, and the way the parents came in there and said that this affected their lives, and that the girl was depressed, and that it was affecting her relationship with the parents. There was evidence the defense counsel knew of to show that the relationship was never very good to begin with with the parents. Also the fact the district court said that this was because he was a police officer. I think the defense counsel could have argued, look, there are two scenarios. There's a scenario where a police officer is doing work, legitimate work, good work, and gets sidetracked with bad motives and bad events. And there's another scenario where a policeman sets out to use his position, the authority of his uniform and his badge, to try to stop young girls and obtain relationships with them. Defense counsel could have shown this was not the latter situation, and the fact that he was a police officer did not warrant this huge variance. Those are two scenarios that we could have combated this with. The problem with this, too, if we're not requiring advance notice, it's all the more reason why there has to be this extreme scrutiny and the reasons have to be compelling. The reasons were not compelling here. All the district court said, and he said it at least twice, this is, and I quote, totally unacceptable. Well, the fact that it's totally unacceptable is why he was prosecuted in the first place. It's why he faced a sentence of 57 to 71 months. Totally unacceptable is not the kind of compelling reason and rationale you need. Well, Osborne is not the typical offender. No. Or is he? He's a police officer. He's a police officer. Doesn't that provide the district court with a significant factor from which he might want to deviate from what would otherwise be the guideline? Not necessarily, Your Honor. Of course, a police officer does have a responsibility, but that was accounted for in the guideline calculation. Also, Your Honor, there was a 2A3.2BPSR paragraph 20, two-level increase because the girl was entrusted to his authority, and it says in the PSR because he was a policeman. It was accounted for in the guideline calculations. Not accounted for in the guidelines, though, is it? I'm sorry? It is not accounted for in the guidelines as far as I know. My recollection is that what the application note speaks to and enumerates are people in custodial and caretaking roles and specifically enumerates people like parents and relatives and guardians, but nobody mentions a police officer in that iteration. That's how it was used here. It was used here in paragraph 20, and it says the two points, and I quote, while he acted in the capacity as a police officer slash police chief. You're reading from the PSR. And that's what the district court went with. But that's not what I'm talking about. I'm talking about whether or not we're determining substantive unreasonableness. We can look to the guidelines and say the guidelines accounted for this. It did, Your Honor, because he would not have had the girl in his custody and control if he were not a policeman. The parents turned to him for assistance with a wayward child. So, yes, it is, and when defense counsel pointed that out in the district court, the district court did not deny that it was accounted for, but just said, still, he's a policeman. We've got to go higher. Let me ask you this question. In your brief, and I found it very difficult to follow this, you said that the district court's application of a total and complete version was unreasonable as well as an ex-postpone. It's a creative argument, Your Honor. Thank you very much. I, too, was trying to figure out how a guideline that's beforehand can be read correctly. I can explain it if you'd like. I got all confused. I was confused with it, too, when I reviewed this record, and it took me quite a while to decipher it in several conversations with trial counsel. It is a creative argument. Frankly, Your Honor, it didn't drive the sentence here. Which of the sentences was the variance? I mean, even if we get down to the lower guidelines. Well, let me ask you this question. Can we say that, well, this is a bandit misargument? I couldn't follow. I couldn't understand how the guideline that was in effect at the time of the crime, applying it, could be an ex-post facto violation. It's confusing. Judge Greenberg, could we simply write, that dog won't hunt? Do you think maybe that would? It's the other way around. I'm happy to explain it if you would. I'm not sure I'm getting mixed signals here. Do you want to hear or don't you? I don't know if I can take it. You admit it's not your strongest argument. I admit that, Your Honor. I don't want to torture anyone. You can perhaps clear up one thing for me. The court at page 107 of the appendix. I'm sorry, the appendix? Yes. In explaining the sentence, after Mr. Hackney has talked about the Kendrick case, the court will let me just add, as to the position of trust, I've already considered that in dealing with the factors from the PSI and from the point count there under. It goes on to say, I don't know what else to say. Did you understand that reference to the position of trust to be a reference to the point you were making a little while before? I did. About the police, status as a police officer? I did, Your Honor, and that is why when I said the district court did not deny that this was accounted for in the guideline computation, that is what I based it on, that it was accepting the representations in the PSR with regard to the enhancement in paragraph 20. And that's what makes it all the more indefensible what the district court did, because there's practically an admission that the police officer status is already factored into the guideline computation, and then a variance on top of it. And the Kendrick case is the same one which was argued earlier, just to clarify that for the court. The district court really provided scant reasoning. We'll have you back on rebuttal. Thank you. We'll be on your time. Thank you. I appreciate the indulgence, Your Honors. Ms. Irwin? I think I went beyond the time, but I won't ask for rebuttal. We do pay careful attention to the red light, as I think everybody knows. May it please the Court, Laura Irwin from the U.S. Attorney's Office in the Western District on behalf of the government. This Court should affirm the sentence issued by the district court to Mr. Osborne as reasonable, and I'd like to start with the Vampire Nation issue. As the Court's probably aware, the government's position when Vampire Nation was argued before this Court, and I had the pleasure of doing that, was that notice should be required. And it is also true that the Vampire Nation does not discuss a due process problem. And before I discuss that with regard to this case, I would just like to bring the Court up to speed on what's going on with the notice issue. If you're not aware, there are two cases that have petitions for cert pending before the Supreme Court that bring this issue of notice to the Supreme Court. In one of the cases, I'm familiar with the briefing, the government has taken the position that the issues before the Rules Committee and should be resolved by the Rules Committee as opposed by a Supreme Court decision. I think you mean the notice for the variants. Right, notice for the variants. Because that's the holding of Vampire Nation that we're concerned with today. No, both petitions, once we allow them through, once through the 5th, are still pending. I wasn't aware of that, but I asked the question about the Rules Committee because I was on it when we adopted 32Hs. It's my understanding that the issue is before the Rules Committee. With regard to this case, I think Vampire Nation squarely applies for a couple different reasons. There's no dispute from Mr. Osborne that the information provided at the hearing by the victims was no different than what was in the PSR. The complaint in the briefs is that it brought an emotional appeal that the district court then relied upon to vary. So we have two points here. One is there's no new information, so there's no question that we don't have the hypotheticals that were presented. There was nothing there that he could have disputed factually. What he could have disputed was the emotional side of it, and I think it's pretty clear that the Crime Victims' Rights Act provides the opportunity to allocate, just as the defendant has, and to emote and let the court know the impact of the case. And in this particular case, that's what happened, and there's absolutely nothing on this record to indicate that those statements drove this variance. There's nothing in the statement of reasons, and, in fact, it's the opposite. Not only were the facts in the PSR not even known to the court, the district court at one point said, I'm ready to sentence, and Penn Hackney stood up and said, Wait, we've got to hear from the victims first, and can the victims go before my defendant allocutes? And then we get to sentencing when Penn objects to the sentence, the district court goes back and says, Don't forget we had the plea before we had the sentencing, and I made it abundantly clear to the parties that I could go up to the statutory maximum in this case, that the guidelines are advisory, that no decision has been made, et cetera, et cetera. So there's nothing in this particular case that would take this over the line to a due process violation. Do you think the court could have said, Look, I'm going to depart and then reach this sentence, and then, you know, it's part of the whole thing, instead of saying, Well, it's a variance, it's not a departure? Well, I suppose it could have. I mean, there was no motions for departure made, and I know at least one circuit, the Fourth Circuit, has held that you do have to depart before you go to a variance. So I suppose that's a possibility, in which case, you know, I'm not sure if we'd be in any different position, other than we'd have more guidelines law to apply to whether the variance was, or excuse me, whether the departure was proper. But in this particular case, I think that another reason for affirmance is not only do you have really no issue with the victim impact statements, but also the statement of reasons. And I recognize that it is not the most detailed statement of reasons, and I would reiterate what Mr. Everhart mentioned earlier, that we would hope that as these cases come back, the district judges do provide more reasoning and more explanation of what's going on. But isn't it inherently not the kind of thing you can give, like, hard statements? I once heard years ago that the real basis for a sentence is that you're a man, that you're defended, and therefore society's going to get evil with it. That, you know, you can put all the icing on it you want. That's why this sentence is really heavy. And, you know, I just wonder whether it's just sort of fluff. I mean, who's to say that that sentence is long enough, but if it was longer, it would be too long. And I think that's part of the point I want to make to the panel, is that if we go back to Cooper, Cooper tells us, you've got to remember the deference out to district courts. You have to remember that these sentencing hearings are done under the exigencies of, you know, people coming, they're upset, the defendants upset, those types of emotional factors, the caseload, et cetera. But we're left with the standard that this court's left to apply, which is substantive reasonableness. That's what applies in this case. That's the question that's before you. And if you have to apply due deference to the district court that's there, what does reasonableness need? And Cooper tells us it's not, we're not going to take form over substance. And if you go back to the record in this case, the PSR, which was adopted by the district court in its tentative findings, and the information, you know, that was brought out in the plea about the elements were met, we know a lot about what this district court said. He mentioned a few, he made clear on the record that it was the offense, the nature and characteristics of the offense and the offender, and the seriousness of the offense. And you can go through what happened in this case. You have a 14-year-old that was obviously solicited by this person, that's what he pled guilty to, used the computer, had a sexual relationship with her. He knew that she was a troubled individual, problems with the law. That's how he met her. He was a police officer. He went in to help. Instead of protecting, he exploited. He had done this before. He admitted that he had had sex in his police vehicle with one other child victim, one other minor. And you have all these factors that you deal, and that's what happened in this case. That's what the district court was looking at. And as far as the argument goes that the guidelines were counted twice, that's a meritless argument, and here's why. First of all, Judge Smith, you're absolutely correct. The custody add-on was because he was allowed to visit the child victim when she was in juvenile detention. The PSR does mention while he was in a police uniform. That's true. But he did not receive an add-on for simply because of his police uniform. It was because they said, you have our permission to take her out in your car. You have our permission to go visit her. That's what that add-on applies to, the babysitter, guardian, custodian setting. And in this particular case, that was applied, but there was no wrongful victim enhancement, there was no position of trust enhancement, and the guidelines are only one factor in the 3553 analysis. And the Supreme Court knew when they decided Booker that you're going to go back and apply these 3553A factors on top of the guidelines, using the guidelines as one factor, knowing full well that the Sentencing Reform Act directed the Sentencing Commission to craft the guidelines with 3553A in mind. The fact that they're already there, the fact that the guidelines are there, does not change the reasonable analysis. And in fact, in the Schweitzer decision and in the King decision in this court, this court is shy away from appropriately, I think, articulating any per se rules about brevity, about if it's a variance that the variance per se leads to anything. The fact that something's already in the guidelines can't per se change anything, because they're supposed to be in the guidelines and they're supposed to be added on. You go from the general to the specific to get to an ultimate sentence. So I'm going to complete your sentence. That's fine. I can go on forever. I have no difficulty recognizing what you've said, that in the PSI there's an awful lot of information that the judge had to work with. What I find something of a puzzle, though, and perhaps you can help me out, is when you start at page 104 of the appendix, where the judge says the reasons for the court sentence is as follows, and then follow through 104 and 105 and up to the top of 106, I find very little except paraphrases of 3553. I agree with you on it. And as I said at the beginning, this is not the most developed record that you're ever going to see, and hopefully as time goes on. And you in the U.S. Attorney's Office would also like to see a more developed record than some of what we've seen, and this may be an example. Without a doubt. And we're also struggling with how we encourage that to happen when we're actually, when the trial assistants are in court, and Judge Smith would know as a judge, sometimes all attorneys are hesitant to interrupt, and we agree with you completely that it's not exactly what we would like to see either. But in this particular case... Well, sometimes it even varies across from judge to judge. Isn't that the truth? I think in this particular case, I agree with you entirely that this judge should have been more locatious perhaps, but let's bear in mind the facts of this case and what was going on here. We had the victim's parents in the courtroom, some suggestion that there was media concerns about her identity, the child victim's identity being known, statements, even in the PSR, that the child victim had been harassed because of her behavior and her actions with the police officer. It could very well be, and I recognize that this is not on the record, but one thing that could have driven the decision of the district court to not, assuming a conscious decision was made, to not go into detail when he said the facts and circumstances of this case, the seriousness of your offense, is that he didn't want to drag out one more time for everyone to hear he was a police officer. He became chief of police. This was an ongoing thing. It wasn't a situational offense. It was pretty disturbing factual information. I think we can all agree that the offense is disturbing, and perhaps that led to the decision of let's just keep it as benign as we can, mentioning the factors and linking it back to this defendant to explain to everyone, because the defendant knows what's in the PSR, the parties know what's in the PSR, and that could have driven it. With that said, I really can't explain why it was not developed more fully. Since we seem to be in agreement that it's desirable for sentencing judges to say what's on their mind, how does the Court of Appeals see to it that that objective is implemented, except in a situation like this, to tell a sentencing judge to try again and give us an explanation? Part of the reason for requiring, I take it, part of the reason for requiring sentencing judges to enlarge on what they're doing is so that the Court of Appeals can have more material with which to make a judgment as to whether this is reasonable or not. I ask this question arguing against interest because when I remember that I am a sentencing judge, then the last thing I want is to have Judge Smith and Judge Greenberg lay down rules as to what I'm supposed to do. And that is the concern that I think I tried to address earlier on, that this court has really tried not to come forward with per se rules, and I think that's wise. I think to affirm in this case, the court doesn't need to go back any further than Cooper. Cooper told us it's form over substance... substance over... Now I've got that backwards. It's due deference to the district court, and you look at the total record before the district court. The district court told us what it was relying upon, the nature and circumstances of the offense and the offender, and the seriousness of the offense. That information is well before the district court and well before this court in the record. Sure, but Ms. Irwin, you would agree, would you not, that while in the wake of Cooper, we probably should not lay down further rules, that at least as a reviewing court, what we all know is when we don't have enough. We don't have to establish a rule that informs this quorum that when it looks at a record, we simply conclude that doesn't tell us enough. We don't know what animated the sentencing judge to do what he did. Do you agree with that? Well, I don't agree that there's not enough here for you to make that determination. With regard to how you tell district judges how to more fully animate their decisions, I would defer to the panel on how to get that across, because so far, in all honesty, we're seeing records where we truly wish there was more and believe there should be more. What more can really be said? I just wonder about it. Well, I guess in this particular case, he could have gone back and ticked off the factors of he was a police officer. He did tick off the statutory factors, which is precisely the problem here. There is very, very little beyond simply a paraphrasing, as Judge Pollack has put, of the statutory 3553A factors. Do you agree with that? Well, not precisely, because he didn't simply, as I've seen in some cases, just read off 3553A. In this case, he started off with, on page 102, he starts off with a brief summary. I'm going to explain to you why I'm ruling this way and elaborate on it more fully later on. He says, your conduct is totally unacceptable, especially since you were a police officer and you deserve that doubling of the guideline range, in my opinion, for the opinions I will share with you in a moment. He goes back and several times mentions, it's the events, it's the seriousness of the events, it's your characteristics. And I suppose one way to approach it would be is that you have to link facts to factors. That would be one way to say it. It's not going to be enough for this court to review unless you tell us what facts you're relying on. I think on this record, it's pretty clear what facts have been relied upon, but if the court decides that it needs to have it one step clearer, those cases in the future, that would be one round to follow. If there are no further questions? Thank you very much, Ms. Gerlach. Thank you. You know, Ms. Gerlach, I had a question for you. Yes, Your Honor. The ultimate point of an appeal, of course, I'm sorry, could you repeat that, please? This question is this. It starts with a factual premise. The ultimate point of this appeal, I suppose, is to get your client a shorter sentence. Certainly. Okay, so now I'm trying to visualize what happens. We say, well, the statement of reasons is inadequate and we're going to send it back. So we send it back, vacate the sentence. Now the judge comes up and goes over these things in greater detail. What I suppose you figure will happen then is they'll say, okay, now that I've gone over this in detail, I realize that the sentence should have been shorter. That's right. I mean, you know, it reminds me of one time I left when I wrote the opinion. I wrote an opinion reversing a summary judgment on the eve of a non-jury trial. Finding that there was a dispute of facts. And then it went back to the judge who had just granted the summary judgment. And later on I found out that two weeks later the trial was conducted. Guess how it came out? I mean, it's, I thought, boy, if this isn't an exercise. And there an old maxim of the law, does not compel a useless act or worse. Yeah, I thought of it at the time. But, I mean, seriously, what's going to happen here? This record is poor. And the district court, it's not clear if the district court had thought in advance of bearing upward, if it was the spur of the moment thing, or why. Our thought on this is that the district court probably did not provide concrete reasons to give a better record because it couldn't. This is not a serial child molester. It seems to be more of an isolated incident. And the mere fact that he was a policeman didn't warrant it. So we believe that when it goes back, and you really argue it again, and the judge then has to really set forth the fact that the judge may come up with a sentence shorter than here. Yes, and also, excuse me. You think this is not necessarily an exercise? Certainly not, Your Honor. And the other aspect of it is that sentencing counsel is prepared to go in and argue more specifically, more concretely, and more vigorously, knowing what has already transpired. And it's why your real issue here, your major issue, is the substantive unreasonableness of the sentence. It's the most, it has the most impact on Mr. Osborne, certainly. But this question of notice is something that impacts all of our clients. And seeing what has happened here is frightening to us as an office, I think. Let me ask you this question. If there was no sentencing guidelines, where there was a range set here, could you have made this argument? In other words, it's got to inherently, see, there's some question in my mind as to whether the guidelines are a good thing. On the other hand, they do give, you know, some kind of a concept of what things ought to be. But could you have made this, if there was no calculation of sentencing guidelines, that it would have been a tougher argument, would it? I don't think so, because again, this is a defendant with zero criminal history points. And this is a defendant who timely... No, no. He didn't even go... We don't have history points. Let's say you look at the prior record if you don't have guidelines and you see the history of the defendant. You also look at factors such as whether the defendant has timely stepped to the plate and acknowledged responsibility. There wasn't even an indictment in this case. He waived indictment and was charged by information. He didn't make the government go to the trouble and expense of indicting him before the grand jury. He just said, okay, I've done something wrong. Give me my punishment. And I think those are things in a non-guideline system that would have kept him well below 12 years. Because this man paid a penalty that I think is beyond what most criminal defendants pay because he was a police officer. I assume he loses his job, his pension, all that. And most defendants in criminal cases, no, they don't have these kind of factors. They don't have a job anyhow. It's in the record, Your Honor. He was so despondent when the charges came to light that he attempted suicide because he knew the damage to his reputation, the end of his career, and everything else. So, yes, it has been a very stiff penalty for him and perhaps stiffer than it would be for some defendants who have nothing to lose, frankly. Yeah, for this man, actually, it was a stiff penalty for about a year. And I think that's a 3553A factor, too. And if anything, maybe it should have gone for a town work variance rather than an awkward one, that once he's finished with his sentence, it's going to be very hard for him to rebuild his life and to get employment and a career. And if anything, he should have had a town work variance and not an awkward variance. And, in fact, defense counsel was arguing for a town work variance based on some of these factors. Thank you very much, Ms. Gillard. Thank you. Thank you, Ms. Irwin. We'll take the case under advisement. Thank you. And we'll ask the clerk to adjourn the court. Please rise. This court is adjourned until June 14th at 10 a.m.